SHARP, W., J.
Hawks appeals from his judgment and sentences from two separate cases: resisting an officer with violence in Case No. 02CF-7970 and possession of more than twenty grams of cannabis in Case No. 02CF-7975. Hawks was sentenced to concurrent terms of one year in jail and was given credit for 26 days time served. On appeal, Hawks contends he was entitled to additional credit for the time he spent in jail on an unrelated murder charge. We find the evidence is sufficient to support the trial court’s denial of this request. Even though we affirm on this point, we must remand the cause to the trial court to correct an error in the judgment form in Case No. 02CF-7975.
The record shows that Hawks was arrested on June 3, 2002, for numerous charges. In Case No. 02CF-7970, he was charged with battery on a law enforcement officer, depriving an officer of means of protection or communication and resisting an officer with violence. In Case No. 02CF-7975, he was charged with possession of more than twenty grams of cannabis with a weapon, carrying a concealed firearm, possession of a firearm by a convicted delinquent and possession of a firearm by a minor.[1] Hawks was released on bond on June 29, 2002.
Some time in the fall of 2002, Hawks was arrested for second degree murder. He was kept in jail without bond.
In January 2003, Hawks entered guilty pleas to resisting an officer with violence in Case No. 02CF-7970 and possession of cannabis over twenty grams but not involving a weapon in Case No. 02CF-7975. In return, the state agreed to nolle pros the other charges and to recommend concurrent sentences of one year in jail. Sentencing was postponed until Hawks’ other criminal matters were resolved.
In September 2003, Hawks was acquitted of the murder charge and released from jail. At the sentencing hearing in these cases, defense counsel asked that Hawks be given credit for the time he served in jail on the murder charge. According to defense counsel, Hawks’ bondsman discharged the bond for Case No. 02CF-7970 in December 2002 while Hawks was in jail on the murder charge. Defense counsel argued Hawks was entitled to credit for the time spent in jail from December 2002 until his release on the murder charge in September 2003.
Apparently the bond paperwork in Case No. 02CF-7970 was stamped “discharged,” had the date of December 3, 2002 on it and *1022 was docketed by an employee in the Clerk’s office. However, the bond paperwork in Case No. 02CF-7975 was not stamped discharged.
Because the bond status was not clear, the judge asked Cindy Knight, the criminal intake team leader at the Clerk’s office, to explain the procedure in bond cases. Knight testified that the Clerk’s office stamps “discharged” on a bond to show the bondsman has no further responsibility in the case. Knight did not believe the bond should have been stamped “discharged” in Case No. 02CF-7970 because only two of the three counts were nolle prossed.
Knight explained that when a bondsman wants to exonerate himself of his obligation on the bond, he surrenders the defendant to jail and the bond is “endorsed.” Once the endorsed bond is received, the Clerk’s office will discharge the bond. Knight did not believe this had happened here because she did not see any endorsed bond paperwork.
Knight also testified the Clerk’s employee who docketed the paperwork sets the arraignment court dates in the Clerk’s office. She does not deal with bond paperwork. Rather, the bond clerks are responsible for stamping the bonds discharged.
Hawks’ mother testified she believed the bondsman had “come off’ the bond. However, the bondsman never testified.
After reviewing the paperwork and hearing from the witnesses, the judge denied the request for additional jail time credit:
[Hawks] posted bond in 7970 and 7975, and was released on those charges on June 29th. He was arrested on June 3rd. He was subsequently charged with second-degree murder, held in jail without bond on that charge; went to trial and was acquitted. At the end of that case, he was released from the jail back into the community, because these files indicate that he — that these bonds were never endorsed by the bondsman. And while the clerk has stamped discharged on one bond, they didn’t stamp it on the other charge, and there’s no supporting document to indicate why a bond would be discharged in CF02-7970.
Mr. Hawks was in jail, like I say, on the second-degree murder accusation, for a length of time, from that charge till he was acquitted at trial, and then he was released. I don’t believe he entered his plea with any communication to the Court that I am in jail on these charges because my bondsman endorsed and I’m not going to get out of jail. In fact, if that had been communicated to me, I’d say, I might as well go ahead and sentence you right now, because you’re not getting out of jail; you have no bondsman; you have no bond to — that you can post.
I didn’t sentence him back on the date of his plea at his own request. And now he wants the benefit of some bargain I don’t think he ever struck, which is to come in and get credit for the time that he served in jail awaiting his trial on a second-degree murder charge against these sentences that he negotiated. And I don’t believe he’s legally entitled to it. He left — if you are correct, he should have sat in jail from his acquittal on the second-degree murder trial until today, and he didn’t. So I don’t think he’s legally entitled to it....
Generally a defendant is only entitled to credit against each sentence for the time spent in jail for the charge which led to that sentence. Blake v. State, 807 So.2d 772 (Fla. 2d DCA 2002). For Hawks to be entitled to credit for the time he spent in jail on the unrelated charge of murder, it was necessary for his bondsman to have “surrendered” him to authorities and have the bond discharged. Whether *1023 that actually happened here is a factual issue. See McKnight v. State, 769 So.2d 434 (Fla. 2d DCA 2000) (defendant’s claim that he was entitled to additional credit for jail time because he voluntarily cancelled his bond on one charge while he was serving jail time on other unbonded charges required an evidentiary hearing).
We conclude the evidence is sufficient to support the judge’s determination that Hawks was not entitled to this additional jail time credit. There was no supporting documentation to indicate why the bond in one case would have been discharged. The employee in the Clerk’s office who docketed that paperwork sets arraignment court dates and does not deal with bonds. The bond paperwork in the other case was not stamped discharged. Most importantly, Hawks was released following his acquittal on the murder charge. This should not have happened had Hawks been surrendered to authorities and his bond discharged.
Hawks also contends the judgment form in Case No. 02CF-7975 incorrectly lists the possession offense as involving a weapon when in fact he entered a plea to the possession charge but not involving a weapon. The transcript supports Hawks’ claim and the state concedes the judgment should be corrected.
AFFIRMED; REMANDED to Correct Judgment in Case 02CF-7975.
GRIFFIN and THOMPSON, JJ., concur.

. Hawks had just recently turned fifteen-years-old but was transferred to adult court.